IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HAROLD STAFFORD, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 3:12-cv-0909 |
| ) | |
| UNITED STATES OF AMERICA, ) | Judge Trauger |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Movant Harold Stafford ("Stafford" or the "movant"), a prisoner presently housed at the federal prison camp in Manchester, Kentucky, has filed a *pro se* motion (ECF No. 1) pursuant to 28 U.S.C. § 2255 to set aside, vacate and correct the amended judgment and sentence entered by this court on July 2, 2009, after a jury verdict rendered on February 4, 2009.

I.     **FACTUAL BACKGROUND AND UNDERLYING PROCEEDINGS**

Stafford was indicted on a fifty-one-count federal indictment, *United States v. Stafford*, No. 3:07-cr-221, in November 2007, charging him with conspiracy to commit wire fraud and bank fraud, and with committing wire fraud, bank fraud, and money laundering. (Indictment, No. 3:07-cr-221, ECF No. 3.) He was found guilty by a jury on all fifty-one counts after a six-day trial before this court beginning on January 27, 2009, and concluding on February 4, 2009.

After a hearing conducted on June 18, 2009, the court sentenced Stafford to serve a term of ninety-six months' imprisonment on each count, to run concurrently, and three years of supervised release on each count, also to run concurrently. The court ordered a special assessment in the amount of $5,100 and payment of restitution, jointly and severally with Stafford's two co-defendants, in the amount of $1,000,773.49. (*See* Am. J., No. 3:07-cr-221, ECF No. 209.)

Stafford, through counsel, appealed to the Sixth Circuit Court of Appeals. In his appeal, he argued that the evidence presented at trial was insufficient to support the verdict, that this court improperly enhanced the advisory guideline range, and that the court erred in not admitting evidence of prior inconsistent statements of a material witness against the defendant/movant. (*See* Appellant's 6th Cir. Br., filed with Gov't

Mot. for Judicial Notice, ECF No. 8-1.) The Sixth Circuit affirmed the judgment and the sentence in a published opinion issued April 27, 2011. *United States v. Stafford*, 639 F.3d 270 (6th Cir. 2011). The Supreme Court denied Stafford's petition for a writ of certiorari on October 3, 2011. *Stafford v. United States*, 132 S. Ct. 328 (2011).

## II. THE CURRENT PETITION

Stafford filed his § 2255 motion on September 4, 2012, asserting that he was deprived of his right to effective counsel as guaranteed by the Sixth Amendment to the United States Constitution, on the basis that

> (1) the evidence was insufficient to sustain his conviction on Count 25 of the indictment, charging bank fraud, but his trial counsel failed to move pursuant to Rule 29 of the Federal Rules of Criminal Procedure for dismissal of that count, and appellate counsel failed to raise this issue on direct appeal;
>
> (2) the evidence was insufficient to sustain Stafford's conviction on Count 43 of the indictment, charging money laundering, but his trial counsel failed to move pursuant to Rule 29 of the Federal Rules of Criminal Procedure for dismissal of that count, and appellate counsel failed to raise this issue on direct appeal;
>
> (3) trial counsel failed to object at trial to the admission and use of the government's exhibits 35, 36, and 37;
>
> (4) trial counsel failed to object at sentencing to the loss-amount calculation, which resulted in an improper 16-level upward adjustment in the advisory guideline range; and
>
> (5) trial counsel failed to perform an adequate investigation as needed to refute the trial court's finding that Stafford's crimes involved 10 or more victims, which resulted in a two-point multiple-victim enhancement under U.S.S.G. § 2B1.1(b)(A)(i).

Shortly after the motion was filed, the court conducted a preliminary examination thereof and determined that it stated colorable claims for relief. The court entered an order (ECF No. 3) directing the government to answer, plead or otherwise respond to the petition. Rule 5, Rules Gov'g § 2255 Proceedings. The government has now filed its response in opposition to the motion (ECF No. 7). Mr. Stafford has filed a reply brief, in which he appears to assert a claim that his counsel was ineffective for failing to object to the fact that he was sentenced on the basis of a materially false Presentence Investigation Report, which resulted in enhancements that "added years to his sentence." (ECF No. 9, at 1.)

## III. STANDARD OF REVIEW

### A. Whether a Hearing Is Required

A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to

"a prompt hearing" at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). Thus, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Rule 4(b) of the Rules Governing § 2255 Proceedings provides that if it plainly appears from the face of the § 2255 motion, exhibits, and prior proceedings that the petitioner is not entitled to relief, the judge shall make an order for its summary dismissal.

In this case, Stafford has not expressly requested a hearing. Moreover, upon consideration of the motion, response, and reply filed in the present case, as well as the record of the underlying criminal proceedings, the court finds that the motion, files and court records conclusively demonstrate that an evidentiary hearing is not required and that the movant is not entitled to the relief sought. The court will dispose of the petition as the law and justice require. Rule 8(a), Rules Gov'g § 2255 Proceedings.

**B.    The District Court's Review of a § 2255 Motion**

To be entitled to relief, a prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion, a movant "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error

so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review, but claims of ineffective assistance of counsel are not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under § 2255 regardless of whether the movant could have raised the claim on direct appeal. *Id.* In the present motion, Stafford raises only ineffective-assistance claims, which he was not required to raise below, so procedural default is not at issue.

## IV.    ANALYSIS AND DISCUSSION

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has long construed this provision to mean that a defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *See McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of

-4-

counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citation omitted).

The second prong of the *Strickland* test requires the movant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* at 697.

In light of these principles, the court will consider each of Stafford's claims.

### A. The Sufficiency of the Evidence Supporting Count 25

Stafford argues that the evidence admitted at trial was insufficient to support his conviction on Count 25 of the indictment, charging bank fraud, because the government failed to prove an essential element of bank fraud as to that count, namely that the financial institution that was defrauded was insured by the Federal Deposit Insurance Corporation ("FDIC"). He asserts that his trial counsel was ineffective for failing to move at trial for a Rule 29 dismissal of Count 25 for insufficiency of evidence, and that his appellate counsel was ineffective for failing to raise this issue on direct appeal. The court finds, as discussed below, that the government produced evidence sufficient to prove each element of the bank-fraud charge at Count 25. Stafford therefore was not prejudiced by his counsel's purported failure to move for dismissal of the count.

Count 25 of the indictment charged that Stafford and his two co-defendants

> knowingly and wilfully executed . . . a scheme and artifice to obtain money under the custody and control of a federally insured financial institution, the Bank of New York (Delaware). HAROLD STAFFORD . . . , for the purpose of executing . . . the aforesaid scheme and artifice to obtain money under the control of a federally insured financial institution, caused to be submitted to the CIT Group [a mortgage company] materially false qualifying information on an application to CIT Group for a mortgage loan to finance the purchase by U.N. of a luxury home at 102 Kinwood Court in Hendersonville, Tennessee.

(Indictment, *United States v. Stafford*, No. 3:07-cr-221, ECF No. 3, at 29.)

The language of the indictment tracked the statutory language of 18 U.S.C. § 1344(2), which makes it a federal crime to "knowingly execute[], or attempt[] to execute, a scheme or artifice . . . to obtain any of the moneys . . . or other property owned by, or under the custody or control of, a [federally insured] financial institution, by means of false or fraudulent pretenses, representations, or promises."

To obtain a conviction for bank fraud under 18 U.S.C. § 1344, the government must prove three elements: "(1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was insured by the FDIC." *United States v. Everett*, 270 F.3d 986, 989 (6th Cir. 2001). Stafford argues in the present case that the defrauded institution that was the subject of the bank fraud charged in Count 25 was CIT Group, a mortgage company located in Nashville, Tennessee, which is not and has never been insured by the FDIC. Stafford's argument fails under Sixth Circuit law.

The Sixth Circuit has recently reconfirmed that, in this Circuit, to demonstrate the second element of the offense, intent to defraud, it is not necessary to show that a federally insured bank is the intended target of the fraud. *United States v. Warshak*, 631 F.3d 266, 313 (2010) (citing *Everett*, 270 F.3d at 991). In *Warshak*, the court expressly distinguished the state of the law on this issue in this circuit from that of the Second and Third Circuits, in which proof of intent to defraud or harm a federally insured bank is required. *See id.* (citing *United States v. Leahy*, 445 F.3d 634, 647 (3d Cir. 2006) ("[W]here there is no evidence that the perpetrator had an intent to victimize the bank, . . . an intent to victimize some third party does not render the conduct actionable under § 1344."); *United States v. Laljie*, 184 F.3d 180, 189–90 (2d Cir. 1999) ("[A] conviction under § 1344 is not supportable by evidence merely that some person other than a federally insured financial institution was defrauded in a way that happened to involve banking, without evidence that such an institution was an intended victim."). In this circuit, by contrast, "[i]t is sufficient if the defendant in

-6-

the course of committing fraud on *someone* causes a federally insured bank to transfer funds under its possession and control." *Everett*, 270 F.3d at 991 (emphasis in original); *see also United States v. Reaume*, 338 F.3d 577, 581 (6th Cir. 2003) ("*Everett* . . . stand[s] for the proposition that the bank fraud statute is violated, even if the intended victim of the fraudulent activity is an entity other than a federally insured financial institution, when the fraudulent activity causes the bank to transfer funds."). In *Reaume*, the Sixth Circuit extended *Everett* to hold that proof of the requisite "intent to defraud the federally insured institution itself is satisfied where: (1) the intent to defraud some entity was present; and (2) that intended fraud placed a federally insured financial institution at a risk of loss." *Reaume*, 338 F.3d at 582.

In other words, a defendant may be convicted of bank fraud if he intends to defraud "*someone*," *Everett*, 270 F.3d at 991, and implements a fraudulent scheme that either causes a federally insured institution to transfer funds, or exposes that institution to some risk of loss. The court instructed the jury that, to prove bank fraud, the government must show that (1) the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the scheme included a material misrepresentation or concealment of a material fact; (3) that the defendant had the intent to defraud; and (4) that the federal institution was federally insured. (*United States v. Stafford*, No. 3:07-cr-221, Trial Tr. Vol. 9, at 1075–76, ECF No. 232, at 141–142.)

The evidence presented at trial on Count 25 of the indictment established all the necessary elements of bank fraud. Straw borrower "U.N." (Uchendi Nwani) testified that Stafford recruited him to purchase six houses, including the house at 102 Kinwood Court in Hendersonville, Tennessee. (Trial Tr. Vol. 2, at 214–26, ECF No. 225, at 110–122, and Vol. 3, at 265–67, ECF No. 226, at 39–41.) A loan in the amount of $419,500 made by CIT Group to finance Nwani's purchase of the house at 102 Kinwood Court was evidenced by the loan closing documents obtained from the Serenity Title Company. (Gov't Ex. 14, at 16096, 16116–16124, and 16127.) That the loan application signed by Nwani for the house at 102 Kinwood Court contained materially false qualifying information was evidenced by the testimony of Nwani and by the loan closing documents obtained from the Serenity Title Company. (Trial Tr. Vol. 3, at 265–67; Gov't Ex. 14, at 16149–16151). Most critically, for purposes of proving bank fraud, CIT Group paid the loan proceeds with a check drawn on its bank account at the Bank of New York (Delaware) ("BNYD"), as was also evidenced by the loan closing documents obtained from the Serenity Title Company. (Gov't Ex. 14, at 16096). In other

words, although CIT Group was the direct target of the fraud, BNYD transferred funds for the purpose of covering the loan issued by CIT Group. The fact that BNYD's accounts were insured by the FDIC was established by stipulation of the parties. (Gov't Ex. 42.) Stafford's participation in this bank fraud scheme was established by abundant other evidence, as discussed by the Sixth Circuit in its opinion affirming Stafford's conviction. *See Stafford*, 639 F.3d at 273 ("Ample evidence, however, supports the view that Stafford was in on the scheme and indeed hatched it."). Thus, the allegations in Count 25 were established by the evidence at trial and satisfied the elements of bank fraud under Sixth Circuit case law.

Because the evidence was clearly sufficient to support Stafford's conviction on Count 25, Stafford was not prejudiced by his trial counsel's failure to move for the summary dismissal of that count, or by his appellate counsel's failure to raise the issue on appeal. Accordingly, Stafford has failed to establish the second prong of his ineffective-assistance claim, and his claim must be rejected.

**B.     The Sufficiency of the Evidence Supporting Count 43**

Count 43, for money laundering, like Count 25, involved real property located at 102 Kenwood Court in Hendersonville, Tennessee. Count 43 charged that Stafford, by depositing a check made out to "The Stafford Lease Group" in the amount of $29,920.50 into a Bank of America account held by the Stafford Holding Group, did knowingly engage in a transaction "by, through and to a financial institution, affecting interstate and foreign commerce, involving criminally derived property of a value greater than $10,000 . . . such property having been derived from" a specified unlawful activity, to wit, bank fraud, as further described in Count 25 of the indictment. (Indictment at 32.) The language of Count 43 tracks the language of the statute prohibiting money laundering, 18 U.S.C. § 1957.

To prove money laundering, the government was required to prove, among other elements, that the monetary transaction involved property criminally derived from bank fraud. Stafford argues that, because the government failed to prove the predicate bank fraud in connection with the transaction involving 102 Kenwood Court as charged in County 25, the money laundering count must also fail. As a result, his argument proceeds, his trial counsel was ineffective for failing to move for a Rule 29 dismissal of Count 43, and appellate counsel was ineffective for failing to raise this issue in Stafford's direct appeal. Stafford does not challenge the sufficiency of the evidence supporting any of the other elements of money laundering required for a conviction under Count 43.

As discussed above, the evidence was sufficient to support the jury's verdict finding Stafford guilty of bank fraud as alleged in Count 25 of the indictment. As a result, the evidence was also sufficient to support the money laundering charge in Count 43. Stafford's trial counsel was not ineffective, and Stafford was not prejudiced by trial counsel's failure to move for dismissal of Count 43. Likewise, his appellate counsel was not ineffective for failing to raise the issue on appeal, and Stafford was not prejudiced by the alleged ineffectiveness. This claim is without merit.

### C. The Admission of Government Exhibits 35, 36, and 37

Stafford argues next that his trial counsel was ineffective to his prejudice for failing to object to the admission in evidence of the government's exhibits 35, 36, and 37, or to object to the jury's being permitted to take these exhibits into the jury room during deliberations. Stafford claims that these exhibits did not qualify as summaries under Rule 1006 of the Federal Rules of Evidence, and that the exhibits were, instead, "pedagogical and argumentative in purpose and scope." (ECF No. 2, at 5.) The court agrees that the exhibits in question were not mere summaries of evidence that fell within the scope of Rule 1006. The exhibits were clearly pedagogical and illustrative in nature, and as such fell within the scope of Rule 611(a) instead. However, the court also finds that, to the extent counsel erred in not objecting to the admission of these exhibits into evidence and their submission to the jury, Stafford was not prejudiced by this error.

Stafford contends that Exhibit 35A, "Schedule of Real Estate with Foreclosure Information," which was presented to the jury in the form of a large display created by Special Agent Robert McCorkle, "did not just reference other documents in evidence but instead extracted details from them . . . [including] addresses, the properties, names of buyers and sellers, dates of purchase and amounts, closing agents, dates of foreclosures and sale prices." (ECF No. 2, at 5; *see also* Exhibit 35A, filed by the Government at ECF No. 10-1, at 1.[1]) Stafford similarly characterizes exhibit 35B, headed "Schedule of Lenders with Loan Totals," as "extract[ing] data from various exhibits and argument[atively] array[ing] it in a manner similar to Exhibit 35A. All the properties were listed showing buyers, date of purchase, number and amount of mortgages on each property, dollar amount and totals." (ECF No. 2, at 6; *see* Exhibit 35B, filed by the Government at ECF No. 10-1, at 2.) Exhibit 35C (ECF No. 10-1, at 3), which shows a "Loss Calculation," "repeated much of the

---

[1] For some reason, the court's file in the underlying criminal action does not contain the original exhibits 35, 36, and 37. Pursuant to the court's directive, the government has filed copies of these exhibits.

Case 3:12-cv-00909 Document 12 Filed 01/11/13 Page 9 of 19 PageID #: 149

dat[a]" in exhibits 35A and B, but its main purpose, according to Stafford, was "to argue for a loss calculation comparing total mortgage amounts to resale prices." (ECF No. 2, at 6.) Stafford argues these exhibits were "nothing less than a final argument in a witness's clothing," and that his counsel was ineffective for failing to object to them. (*Id.*) The government describes exhibits 35A, 35B, and 35C as having been prepared by Agent McCorkle based on his "analysis" of public records from the Sumner County and Davidson County Register of Deeds offices, which public records were admitted into evidence as exhibit 38; the same information was also contained in the loan-closing files that were admitted into evidence as exhibits 1 through 22. (ECF No. 7, at 11 (citing Trial Tr. Vol. 8, at 927–31).)

The government concedes that exhibits 36A, 36B, 36C, 36D, and 37 (ECF No. 10-2, at 1–5, and ECF No. 10-3), were also prepared by Agent McCorkle based on "his analysis of the bank records for bank accounts in the name of the Stafford Lease Group, Inc., the Stafford Holding Group, Inc., and Keys to Success, Inc.," all of which records were maintained by Bank of America and were entered into evidence as exhibit 27. (ECF No. 7, at 11.) Stafford points out that these exhibits showed not only banking information but also banking transactions organized by color-coordinated accounts, as well as the "names of buyers, sellers, and amounts and a large number of other details," including "dates, amounts, payee and payor, what property it related to, and other specific data." (ECF No. 2, at 6–7; *see* Trial Tr. Vol. 9, at 941, ECF No. 232, at 8.) He asserts that these charts were "pedagogical in purpose and redundant." (ECF No. 2, at 6.) Stafford argues that exhibit 37 "color coordinated with Exhibit 36[2] . . . and offered to pull together the government's case all together in one neat package." (ECF No. 2, at 7; *see* Trial Tr. Vol. 9, at 941 and 943 (Agent McCorkle's testimony describing exhibit 36A as a flow chart with bank accounts and transactions "broken . . . out by account and color coordinated [by] account," and exhibit 37 as "showing the date of the [Bank of America] transaction; the amount of the transaction; the remitter, who gave it to them; the corresponding property that it related to; the property's purchaser; and the disposition of the check, which account it went into on the color coordinated chart").)

In that regard, Stafford claims that these exhibits, taken together, "usurped the power of the jury to determine the facts from the properly admitted evidence and documents," and were "an invitation to the jury

---

[2] The version of Exhibit 37 filed with the court is not in color, though Exhibit 36 is.

to take a shortcut and rely on these objectionable argumentative opinionated analysis of the facts rather than their own analysis." (ECF No. 2, at 7.) Stafford argues generally that these exhibits neither contained "new or independent evidence," nor consisted of "valid summaries" admissible under Rule 1006 of the Federal Rules of Evidence, because all the underlying documentary evidence was "admitted and [was] not too voluminous to be used in Court and in the jury room." (*Id.*) Stafford insists his counsel was constitutionally ineffective for failing to object to the introduction of these exhibits, and for failing to object to their being permitted to go the jury room during deliberations, citing *United States v. Munar*, 419 F. App'x 600 (6th Cir. 2011). Stafford does *not* contend, however, that exhibits 35, 36, or 37 contained erroneous or even misleading information, or that they contained information that had not already been properly admitted in some other form.

In response, the government simply argues that the exhibits were properly admitted as summaries under Rule 1006, but also points out that the court instructed the jury, at the close of evidence, that during the trial it had "seen or heard summary evidence in the form of charts, drawings, calculations or similar material" and that these summaries themselves were "admitted in evidence in addition to the material summarized" for the purpose of assisting the jury "in understanding the evidence that ha[d] been presented." (Trial Tr. Vol. 9, at 1089.) The court also added that "the summaries themselves are not evidence of the material summarized and are only as valid and reliable as the underlying material summarized." (Trial Tr. Vol. 9, at 1089–90.)

The question presented by the movant's argument is whether the subject exhibits were "pedagogical devices" more properly considered under Rule 611(a), which typically are not admissible as evidence, or were summaries of voluminous evidence that were properly admitted as evidence under Rule 1006. The Sixth Circuit has explained the distinction between Rule 1006 summaries and Rule 611(a) pedagogical devices as follows:

> Contents of charts or summaries admitted as evidence under Rule 1006 must fairly represent and be taken from underlying documentary proof which is too voluminous for convenient in-court examination, and they must be accurate and nonprejudicial. Such summaries or charts admitted as evidence under Rule 1006 are to be distinguished from summaries or charts used as pedagogical devices which organize or aid the jury's examination of testimony or documents which are themselves admitted into evidence. Such pedagogical devices are more akin to argument than evidence. . . . Quite often they are used on summation. Generally, such a summary is, and should be, accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not itself

constitute evidence.

*Gomez v. Great Lakes Steel Div.*, 803 F.2d 250, 257–58 (6th Cir. 1986) (citations and internal quotation marks omitted), *quoted in United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 1998). In other words, summary exhibits that are used as pedagogical devices do not, "strictly speaking, . . . fall within the purview of Rule 1006," *United States v. Paulino*, 935 F.2d 739, 753 (6th Cir. 1991), *superseded on other grounds by statute as stated in United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000), and typically are not admitted into evidence.

In *Bray*, the Sixth Circuit further elaborated upon what it meant by "pedagogical devices" that fall outside Rule 1006:

> We understand the term "pedagogical device" to mean an illustrative aid such as information presented on a chalkboard, flip chart, or drawing, and the like, that (1) is used to summarize or illustrate evidence, such as documents, recordings, or trial testimony, that has been admitted in evidence; (2) is itself not admitted into evidence; and (3) may reflect to some extent, through captions or other organizational devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent. This type of exhibit is more akin to argument than evidence since [it] organize[s] the jury's examination of testimony and documents already admitted in evidence. Trial courts have discretionary authority to permit counsel to employ such pedagogical-device "summaries" to clarify and simplify complex testimony or other information and evidence or to assist counsel in the presentation of argument to the court or jury. This court has held that Fed. R. Evid. 611(a) provides an additional basis for the use of such illustrative aids, as an aspect of the court's authority concerning the mode . . . of interrogating witnesses and presenting evidence. . . .
>
> . . . .
>
> We note in passing that in appropriate circumstances not only may such pedagogical-device summaries be used as illustrative aids in the presentation of the evidence, but they may also be admitted into evidence even though not within the specific scope of Rule 1006. Such circumstances might be instances in which such pedagogical device is so accurate and reliable a summary illustration or extrapolation of testimonial or other evidence in the case as to reliably assist the factfinder in understanding the evidence, although not within the specific requirements of Rule 1006.
>
> To recapitulate, there are three kinds of summaries:
>
> (1) Primary-evidence summaries . . . which summarize "voluminous writings, recordings, or photographs" that, because they are so voluminous, "cannot conveniently be examined in court." Fed. R. Evid. 1006. In this instance, the summary, and not the underlying documents, is the evidence to be considered by the factfinder.
>
> (2) Pedagogical-device summaries or illustrations, such as chalkboard drawings, graphs, calculations, or listings of data taken from the testimony of witnesses or documents in evidence, which are intended to summarize, clarify, or simplify testimonial or other evidence that has been admitted in

> the case, but which are not themselves admitted, instead being used only as an aid to the presentation and understanding of the evidence. For these the jury should be instructed that the summaries are not evidence and were used only as an illustrative aid.
>
> (3) Secondary-evidence summaries that are a combination of (1) and (2), in that they are not prepared entirely in compliance with Rule 1006 and yet are more than mere pedagogical devices designed to simplify and clarify other evidence in the case. These secondary-evidence summaries are admitted in evidence not in lieu of the evidence they summarize but in addition thereto, because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the jurors in better understanding the evidence. In the unusual instance in which this third form of secondary evidence summary is admitted, the jury should be instructed that the summary is not independent evidence of its subject matter, and is only as valid and reliable as the underlying evidence it summarizes.

*Bray*, 139 F.3d at 1111–12 (most internal citations and quotation marks omitted).

The court finds that the exhibits at issue here did not fall within the scope of Rule 1006, as characterized by the Sixth Circuit, insofar as they did not, strictly speaking, simply summarize other evidence which, because of its volume, was not admitted into evidence. Instead, the evidence referenced in exhibits 35, 36, and 37 was admitted into evidence. In addition, as the government concedes, the exhibits prepared by Agent McCorkle consisted of "analysis" of the underlying evidence, rather than simply a summary of that evidence. The fact that the exhibits included headings and color coding, and that they pulled together an array of evidence from a multitude of different sources, further demonstrates that these exhibits were not mere summaries falling within the purview of Rule 1006. That the parties requested a general qualifying instruction to the jury that such summaries were admitted into evidence for the purpose of assisting the jury in understanding the evidence that had been presented, and that the summaries were not themselves to be considered as evidence (*see* Agreed Set of Jury Instructions, No. 3:07-cr-221, ECF No. 99, at 29), further substantiates the conclusion that these summaries were not admissible under Rule 1006. Instead, it readily appears that these exhibits consisted of "summaries or illustrations . . . taken from the testimony of witnesses or documents in evidence, which are intended to summarize, clarify, or simplify testimonial or other evidence that has been admitted in the case." *Bray*, 139 F.3d at 1112. Although the summaries contained no new evidence, Agent McCorkle's analysis served to draw inferences and conclusions from the underlying evidence, tying it all together. *Cf. Paulino*, 935 F.2d at 753 ("The summaries presented here are pedagogical

devices more akin to argument than evidence since they organize the jury's examination of testimony and documents already admitted in evidence." (citation and internal quotation marks omitted)). The court therefore concludes that there is at least a question of fact as to whether reasonable counsel would and should have objected to the inclusion of these exhibits as evidence and the submission of the exhibits to the jurors when they retired to the jury room to deliberate.

The court cannot find, however, that Stafford was prejudiced by this purported error. First, even if his counsel had objected to the admission of Agent McCorkle's charts and summaries into evidence, the court very likely would have concluded that the exhibits represented the rare example of a combination of Rule 611(a) and Rule 1006 summaries. The summary exhibits were "not prepared entirely in compliance with Rule 1006 and yet [were] more than mere pedagogical devices designed to simplify and clarify other evidence in the case," and were admissible in addition to the evidence they summarized because the summaries "so accurately and reliably summarize[d] complex or difficult evidence" that they materially assisted the jury in better understanding that evidence. *Bray*, 139 F.3d at 1112. And, in fact, the jury was instructed that the summaries were not independent of the documentation underlying them, but were "only as valid and reliable as the underlying evidence [they] summarize[d]." *Id.* It clearly would have been well within the court's discretion to admit the exhibits in evidence, even if Stafford's attorney had objected. *See Paulino*, 935 F.2d at 753 ("The admission of [Rule 611(a)] summaries is committed to the sound discretion of the trial court."); *United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979) ("There is an established tradition, both within this circuit and in other circuits, that permits a summary of evidence to be put before the jury with proper limiting instructions.").

Further, even if the exhibits arguably were not admissible as hybrids of Rule 611(a) and Rule 1006 summaries, Stafford still cannot establish that he was prejudiced by the submission of the summary exhibits to the jury, because he does not show, or even argue, that the summaries were inaccurate or misleading, and he does not claim that they incorporated evidence that was not otherwise properly admitted. He argues only that the exhibits were pedagogical and argumentative and that they were "an invitation to the jury to take a shortcut and rely on these objectional [sic] argumentative opinionated analysis of the facts rather than their own analysis." (ECF No. 2, at 7.) The court provided a limiting instruction, however, and defense counsel had ample opportunity to cross-examine Agent McCorkle about the summaries. Moreover, the evidence of

Stafford's guilt presented at trial, even without Agent McCorkle's exhibits, was fairly overwhelming, such that admission of the summaries into evidence likely had a relatively minimal effect on the jury's overall assessment of the evidence.

Under similar circumstances, the Sixth Circuit has held that the admission of such summaries into evidence and their submission to the jury did not prejudice the defense. For instance, in *United States v. Munar*, the only case referenced by the movant in his memorandum in support of his motion, the Sixth Circuit found that the trial court had erred allowing into the jury room a pedagogical summary used at trial that had not actually been admitted in evidence, but that the error was not prejudicial. The district court in that case allowed the chart to go to the jury room, over the defendant's objection, but also included a specific instruction to the jury that the chart itself was not evidence and was not to be considered as proof of any fact. The Sixth Circuit noted that, even with "a limiting instruction, there is authority to the effect that the better practice is to allow the exhibit to be used only as a demonstrative adjunct to testimony, and not to allow the chart to be formally admitted into evidence and thus go to the jury room." *Munar*, 419 F. App'x at 609 (quoting *United States v. Gazie*, 786 F.2d 1166 (Table), 1986 WL 16498, at *7 (6th Cir. Feb. 26, 1986)). However, the trial court had determined that the exhibit at issue "was an appropriate aid for the jury" in a "complex international bank-fraud case involving numerous persons and thousands of exhibits, and that actual evidence had been presented on the assertions underlying the exhibit." *Munar*, 419 F. App'x at 609. Because the defendant objected only on the basis that the jury would rely on the exhibit as fact, and not on the basis that the summary was unsupported by the evidence of record, the Sixth Circuit held that the district court's limiting instruction "adequately dispelled that danger." *Id.*

Likewise, in Stafford's case, the movant has not argued that the summary exhibits were unsupported by the evidence of record, and the court's limiting instruction adequately dispelled the danger that the jury would rely too heavily upon the exhibit. In sum, although defense counsel arguably should have objected to the admission into evidence of exhibits 35, 36, and 37, the court likely would have overruled such an objection and exercised its discretion to admit the evidence. And even if the court might have been persuaded not to allow the evidence into the jury room, Stafford was not prejudiced by its admission or its submission to the jury. The movant is not entitled to relief on the basis of this claim.

**D.     The Loss-Amount Calculation and Resulting Guideline Enhancement**

Under § 2B1.1 of the United States Sentencing Guidelines, if the loss amount associated with the offense of conviction is more than $1,000,000 but less than $2,500,000, the base offense level is increased by sixteen levels. Items such as interest, finance charges, late fees, penalties and other costs are not to be included in the loss calculation. U.S.S.G. 2B1.1 cmt. n.3(D)(i) (2009).

Stafford argues that his trial counsel was ineffective for failing to object at sentencing to the loss-amount calculation set forth in the Presentence Investigation Report ("PSR"). Stafford is under the impression that the PSR showed a loss amount of $1,000,773.49. He claims that this loss amount was not supported by trial testimony, but he only specifically objects to one example of a purported error in the loss calculation. He asserts that the total loss ascribable to the Bank of Nashville in connection with the property located at 744 Plantation Way in Gallatin, Tennessee was $150,000, but that the PSR erroneously reflects the loss as $157,226.62. He states that this figure was reached by including a $1,863.35 balance at Bank of Nashville and a balance of $155,363.27 from Universal Assurrors Agency, Inc., Bank of Nashville's insurer. Stafford asserts that reducing this particular loss to $150,000 by subtracting the improperly included costs ($7,226.62), alone would bring the total loss amount to below $1,000,000 and result in a two-point reduction in his sentencing level.

Stafford is simply incorrect that the loss amount for sentencing purposes was only $1,000,773.49. That figure represented the amount of restitution ordered.[3] In fact, the loss amount for sentencing purposes was calculated to be $2,214,660 (*see* PSR App. A, No. 3:07-cr-221, ECF No. 221, at 49–50), and this sum was supported by evidence presented at trial. Appendix A to the PSR shows that the loss calculation was

---

[3] As the government points out, the amount awarded to victims as restitution is not the same as the amount of the loss suffered by those same victims for purposes of determining Stafford's offense level. In some instances, the amount awarded to a victim as restitution exceeded the amount used by the probation officer and the court as the loss suffered by the same victim for purposes of determining Stafford's offense level. The amount of restitution ordered to be paid to a particular victim may be greater than the amount of the loss ascribed to that victim for purposes of determining a defendant's offense level, because restitution may include a lender's expenses directly associated with liquidating collateral for a fraudulently obtained loan, and other expenses necessarily incurred when a secured lender mitigates its losses from fraud by foreclosing on collateral. *See United States v. Boccagna*, 450 F.3d 107, 120-21 (2nd Cir. 2006) (HUD entitled to recoup its out-of-pocket costs in obtaining clear title to properties that secured fraudulently obtained loans); *United States v. Corey*, 77 F. App'x 7 (1st Cir. 2003) (holding that legal expenses and prejudgment interest were properly included in the amount the defendant was ordered to pay as restitution); *United States v. Bryant*, 139 F.3d 893 (Table), 1998 WL 122095 (4th Cir. March 18, 1998) (attorney's fees and foreclosure costs allowed).

premised solely upon the difference between the original mortgage amounts for the real properties at issue, and the resale amounts. These figures do not include interest or other costs. Specifically with respect to the property at 744 Plantation Way, Appendix A to the PSR shows that the mortgage amount was $1,065,000, and the resale amount was $969,900, resulting in a discrepancy, or loss to the mortgage holder, of $95,100 (PSR App. A at 49), substantially less than the $150,000 loss to which the movant erroneously appears to concede in his memorandum.

The loss amount was clearly more than $1,000,000 and less than $2,500,000. The movant has not shown that the PSR calculation was incorrect or that it was unsupported by evidence proven at trial. Accordingly, Stafford cannot establish that his counsel erred in failing to object to the loss amount recommended in the PSR, nor that he was prejudiced by this purported failure. Stafford is therefore not entitled to relief on the basis of this claim.

### E. The Multiple-Victim Guideline Enhancement

Finally, Stafford argues that his trial attorneys were ineffective because they failed to object to the trial court's application of a two-point multiple-victim enhancement on the basis that Stafford's crimes involved ten or more victims, *see* U.S.S.G. § 2B1.1(b)(2)(A), and that he was prejudiced by this failure. Stafford contends that the district court was entitled to count as victims for sentencing purposes only the five victims that provided the basis for the PSR's loss calculation of $1,000,773.49.

As an initial matter, as discussed above, the movant is incorrect in stating that the loss amount was $1,000,773.49. That figure is the amount awarded as restitution. Appendix B, which reflects the calculation of the restitution amount, also shows that several of the lenders who were victims of the movant's scheme had gone out of business by the time the PSR was compiled, or that the government was unable to locate them, which was why restitution was only awarded to five of the victims. In addition, the PSR's conclusion that there were twelve lenders who provided financing for the scheme is amply supported by the record, as the lenders were all victims of the movant's fraud. *See* U.S.S.G. § 2B1.1 cmt. n.1 (defining "victim" for purposes of this section as any person who sustained any part of the actual loss determined under

-17-

subsection (b)(1)).[4]

Stafford's trial counsel was not deficient in failing to object to the two-level increase based upon the number of victims recommended by the PSR and found by the court, because the number of victims was, in fact, more than ten. Stafford suffered no prejudice resulting from his trial counsel's failure to object to the number of victims stated in the PSR. The evidence presented at trial established the number of victims for purposes of sentencing. The movant is not entitled to relief on the basis of this claim.

### F. The Materially False PSR

In his reply brief, Stafford asserts that he was "sentenced on the basis of a false PSR which was materially untrue," and that, as a result of his counsel's failure to object to the false PSR, "enhancements were placed on the Movant's base level, adding years to his sentence" and rendering his sentence constitutionally invalid. (ECF No. 9, at 1.) It is unclear whether Stafford is making a new argument here, or simply buffering his argument in support of his other claims. To the extent he is attempting to assert a new claim, he has not done so with the clarity required by Rule 2 of the Rules Governing § 2255 Proceedings. He is therefore not entitled to relief on the basis of this claim.

## V. CONCLUSION

For the reasons set forth herein, the court concludes that Stafford's motion under § 2255, asserting claims of ineffective assistance of counsel, is without merit. The motion will therefore be denied and this matter dismissed.

Pursuant to Rule 11 of the Rules Governing § 2255 Proceedings, the court must, at the time of entry of this final order denying relief, either issue or deny a certificate of appealability ("COA"). The court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Perkins v. McQuiggin*, 670 F.3d 665, 668 (6th Cir. 2012). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

---

[4] The government points out that there were actually thirteen victims, including Universal Assurrors Agency, Inc., the insurer for Bank of Nashville that bore part of the loss, and the twelve lenders identified at trial: (1) Accredited Home Lenders; (2) Allied Home Mortgage; (3) Ameritrust Mortgage Company; (4) Bank of Nashville; (5) Chase USA; (6) CIT Group; (7) Countrywide Home Loans; (8) Franklin Mortgage Finance Company; (9) Fremont Investment and Loan; (10) The Lending Group (an HSBC Company); (11) Long Beach Mortgage Company; and (12) Wilmington Finance. (*See* PSR App. B at 51–56; Gov't Exs. 1-22.)

"adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

Under that standard, the court finds that the movant has made a substantial showing of the denial of a constitutional right with regard to the first, second and third grounds for relief set forth in his motion and supporting memorandum of law: (1) that the evidence was insufficient to support his conviction for bank fraud as to Count 25 of the indictment, and that his trial counsel was ineffective for failing to move for the dismissal of that claim under Rule 29 of the Federal Rules of Criminal Procedure; (2) that the evidence was insufficient to support the movant's conviction under Count 43 of the indictment, which relied upon a predicate showing of bank fraud in Count 25, and that the movant's trial counsel was ineffective for failing to move for dismissal of that claim under Rule 29; and (3) that the movant's trial counsel was ineffective for failing to object to the introduction into evidence, and the submission to the jury during their deliberations, of certain summary exhibits that did not qualify for admission under Rule 1006 of the Federal Rules of Evidence. The court will therefore issue a COA as to those grounds for relief.

An appropriate order is filed herewith.

_____
Aleta A. Trauger
United States District Judge

-19-

Case 3:12-cv-00909   Document 12   Filed 01/11/13   Page 19 of 19 PageID #: 159